**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-4233 and 10-3694
_____

GUANGYU LIANG,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-378-054)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2011

Before:  RENDELL, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: April 21, 2011)
_____

OPINION
_____

PER CURIAM

In these consolidated appeals, Guangyu Liang petitions for review from two orders

of the Board of Immigration Appeals (BIA).  First, Liang challenges the BIA's order

affirming the decision of the Immigration Judge (IJ) denying asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Second, Liang challenges the BIA's order denying his subsequent motion to reopen. We will deny the petitions for review.

I.

Liang is a citizen of China who was admitted to the United States on a visitor's visa in 2006. In 2006, Liang applied for asylum, withholding of removal, and CAT relief, and the Department of Homeland Security (DHS) charged him with being removable under section 237(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(B), as an alien who had overstayed his visa. Liang conceded his removability but reasserted his claims for asylum and related relief, alleging that (1) he had been persecuted for offering "other resistance" to China's coercive population-control policies, see INA § 101(a)(42); and (2) he had a well-founded fear of future persecution on account of his Christianity.

At an administrative hearing before an IJ, Liang testified in support of his claims. He explained that he and his wife had had a daughter in 2002, and that three years later, his wife had again become pregnant. Although the Liangs wanted a second child, family-planning officials forced Liang's wife to have an abortion. According to Liang, after his employer learned of his family's attempt to circumvent the family-planning rules, it withheld his commissions for nearly a year, relegated him to the most undesirable work available, and ultimately terminated his employment. Liang also testified that upon

2

arriving in the United States, he converted to Christianity.

The IJ concluded that Liang was removable, and found that he had not testified credibly. Liang then sought review before the BIA, which dismissed his appeal. The BIA concluded that the IJ's adverse credibility determination was not clearly erroneous, noting both that there were several inconsistencies between Liang's written statement and his testimony and that it would defer to the IJ's assessment of Liang's demeanor. The decision that Liang was not credible was fatal to his claim concerning his opposition to China's family-planning practices. The BIA further affirmed the IJ's decision that Liang had not shown a well-founded fear of future persecution due to his Christianity. The BIA noted that Liang had converted to Christianity only a month before the hearing, which suggested that Liang may not have been truly committed to the religion. Moreover, the BIA concluded that even accepting the sincerity of Liang's belief, the country-condition materials did not show that the Chinese government would persecute him for his religion.

A little over a year later, Liang filed a motion to reopen with the BIA. He submitted additional evidence demonstrating that he had converted to Christianity, a letter from his wife stating that the government had confiscated religious materials that Liang had tried to mail to her, and the State Department's 2008 International Religious Freedom Report on China. The BIA denied the motion. It concluded that even if it assumed that Liang intended to practice Christianity in China, the evidence did not show that the government would persecute him. The BIA further held that the government's refusal to deliver Christian materials to his wife did not provide a basis for him to fear

3

future persecution. Liang filed timely petitions for review to this Court as to both the BIA's underlying order and its order denying his motion to reopen.

II.

We have jurisdiction over the BIA's orders pursuant to section 242(a). As to the underlying order of removal, where, as here, the BIA based its decision on the IJ's adverse credibility analysis, we may review the opinions of both the BIA and the IJ. Thu v. Att'y Gen., 510 F.3d 405, 412 (3d Cir. 2007). We review agency factual determinations, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B). Although adverse credibility determinations cannot be based on speculation or conjecture, "such a finding will be afforded substantial deference where it is grounded in evidence in the record and where the IJ provides specific, cogent reasons for her determination." Adbulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003).[1]

We review for abuse of discretion the BIA's decision to deny Liang's motion to reopen. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). The BIA's decision is

---

[1] Because Liang filed his asylum application after May 11, 2005, the provisions of the REAL ID Act governing credibility determinations apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). We have yet to apply the REAL ID Act's credibility standard in a precedential opinion, and we need not do so here, because the inconsistencies that the BIA found relate to the heart of Liang's claims for relief, and would thus support an adverse credibility determination even under the pre-REAL ID Act standard.

4

entitled to "broad deference," Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (internal quotation marks omitted), and it "will not be disturbed unless [it is] found to be arbitrary, irrational, or contrary to law," Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (internal quotation marks omitted).

III.

Liang first argues that, in the underlying proceeding, the BIA wrongly upheld the IJ's adverse credibility determination pertaining to his claim that he had offered "other resistance" to China's family-planning policies. We disagree.

As the BIA noted, Liang's account of his experiences in China changed markedly from the affidavit he submitted in support of his application to the testimony he provided during his hearing. In the affidavit, Liang stated that his employer had attempted to convince him to persuade his wife to undergo a voluntary abortion, and when he refused, his employer threatened to fire him. He did not mention any further reprisals. However, when he testified, he said that his pay was docked, he was forced to work unpleasant jobs, and he was eventually fired. The retaliation that Liang allegedly suffered for failing to comply with the family-planning rules is central to his claim that he was persecuted in China, and the fact that he gave materially different accounts of his experience supports the adverse credibility determination. See, e.g., Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

Liang argues that he provided a reasonable explanation for this discrepancy — he originally sought relief solely on the basis of his wife's abortion, and did not enlarge his

5

claim to include the other-resistance theory until after submitting the affidavit. However, even in his initial affidavit, he claimed that his employer had threatened to fire him. Given that he included this less-serious but closely related allegation in the statement, it was reasonable for the IJ to disbelieve his explanation for the omissions and conclude that the inconsistencies between the accounts reflected negatively on his credibility.

The adverse credibility determination is further supported by the IJ's assessment of Liang's demeanor. The IJ noted that there were long pauses between the interpreter's questions and Liang's responses, that Liang's responses were stilted and halting, and that he did not appear eager to tell his story. It was appropriate for the IJ to consider Liang's demeanor in making her credibility determination, see Chen v. Gonzales, 434 F.3d 212, 220 (3d Cir. 2005), and we accord substantial deference to these observations, see Dia, 353 F.3d at 252 n.23.

Accordingly, we conclude that substantial evidence supports the IJ's adverse credibility determination. Because Liang failed to provide credible testimony in support of his claim that he was persecuted on account of his resistance to China's family-planning practices, he was not entitled to either asylum or withholding of removal on that theory.[2] See Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003).

---

[2] While Liang initially sought CAT relief, he has made no argument concerning that claim in his appellate brief. Nor has he challenged the BIA's conclusion in the underlying case that he was not entitled to relief on his religious-persecution claim. We therefore do not consider those issues.

IV.

Liang also seeks review of the BIA's refusal to reopen the order of removal to consider his new evidence that he would be persecuted on account of his Christianity if he returned to China. A claim of future persecution requires the applicant to demonstrate a subjective fear of persecution and that the fear is objectively reasonable. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). The objective prong can be satisfied by showing either that (1) the alien "would be individually singled out for persecution" or (2) there is a "pattern or practice" in the country of persecuting individuals who are similarly situated to the alien. Id. The BIA concluded that, even assuming that Liang could show a subjective fear of persecution, he could not satisfy the objective prong.[3]

Liang first argues that he has shown that he would be singled out for future persecution. He contends that the government confiscated the religious materials he attempted to send to his wife. However, the evidence does not suggest that the government has any further interest in Liang's wife, let alone in Liang. Moreover, Liang failed to show that the authorities in China persecute those who attempt to mail religious materials to China. Therefore, we conclude that substantial evidence supports the BIA's

---

[3] Both the IJ and the BIA also expressed doubts about the sincerity of Liang's conversion. They had good reason to — before the IJ, Liang testified that one of the reasons he converted was because the immigration laws had changed and he was no longer eligible for asylum based solely on his wife's forced abortion. However, because we conclude that the BIA's alternative conclusion is supported by substantial evidence, we need not address whether Liang genuinely holds his beliefs. See generally Najafi v. INS, 104 F.3d 943, 949 (7th Cir. 1997) (stressing the difficulties inherent in this type of analysis).

determination.

Liang also argues that the record shows a pattern or practice of persecution of Christians in China. The only evidence he cites for this proposition is the 2008 International Religious Freedom Report. As the BIA explained, however, the 2008 report states that most Christian groups no longer operate in secrecy and that the government's repression is inconsistent and sporadic. While the report does state that the government's tolerance of Christianity is not uniform, it nevertheless provides a sufficient basis for the BIA's decision. See, e.g., Ambartsoumian v. Ashcroft, 388 F.3d 85, 91 (3d Cir. 2004) (concluding that although evidence in State Department country report "may be equivocal," the agency was entitled to base a persecution determination on it). Therefore, we conclude that the BIA's decision was supported by substantial evidence. Cf. Chen v. Gonzales, 470 F.3d 1131, 1136-38 (5th Cir. 2006) (holding that country reports did not compel the conclusion that there was a pattern or practice of persecution against Christians in China).

Accordingly, we will deny the petitions for review.